IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

WENDELL BROCK BENNINGS                                                                PLAINTIFF

v.                                         Civil No. 6:23-06084-SOH-CDC

CHIEF STEVEN ELROD,
SHERIFF MIKE McCORMICK,
CAPTAIN JOEL WARE,
LT. CHRIS McFEE,
LT. BRAINSTETTER,
LT. AARON MANN,
SGT. NATHAN BURGETT,
SGT. KOREEN GATES,
PATRICIA SOWELL,
JOHN DOES 1-13,
MEDICAL ASSISTANT CHRISTINE
WATSON,
HOUSING DEPUTY STEPHAN MOSS,
HOUSING DEPUTY C. PARRISH, and
HOUSING DEPUTY CHANDLER                                                              DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1] Under § 1915A, the Court is required to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

---

[1] Enacted as part of the Prison Litigation Reform Act ("PLRA").

1

## I. BACKGROUND

Plaintiff filed his Complaint on July 12, 2023, and filed an Amended Complaint on July 21, 2021. (ECF Nos. 1,9). On July 25, 2023, the Court entered an Order directing Plaintiff to submit a Second Amended Complaint, which was filed with the Court on September 5, 2023. (ECF Nos. 10,14).

Plaintiff identifies himself as a pretrial detainee in the Garland County Detention Center. ("GCDC"). (ECF No. 14 at 2). For his first claim, Plaintiff names Defendant Moss, Burgett, Ware, Elrod, McCormick, John Does 1-3, and Brian Nobles. (*Id*. at 5). Plaintiff alleges that on June 4, 2023, he was cleaning his cell when Inmate Mike Lester attacked him. (*Id*.). Plaintiff alleges "Mr. Lester is not the same classification as me and in this segregation unit is not supposed to be out of his cell while I am." (*Id*.). Defendant Moss reached the cell, ended the attack, and took Plaintiff to the infirmary. (*Id*.). Plaintiff says he was hospitalized for his head and "facial trauma" from the attack, alleging he received "one major wound in his head and eye area that affects my vision and has a permanent scar." (*Id*. at 6). Plaintiff alleges Defendant Moss was the housing deputy who left Inmate Lester's door open. (*Id*.). He alleges Defendants Nobles, Burgett, Ware, Elrod and McCormick are "all directly in the chain of command that makes it possible for housing deputies to have inmates' doors open and could have stopped it with their authority but haven't." (*Id*.).

Plaintiff proceeds against Defendants in their official and individual capacities. (*Id*.). As his official capacity claim, Plaintiff alleges it is a widespread practice to leave inmate workers' doors open/unlocked so that they are free to "go about the unit as they please." Plaintiff alleges these workers are "not supposed to be out with me or any inmate [who] is not their classification." (*Id*.). He alleges they continue to do so even after his attack. (*Id*.).

2

For his second claim, Plaintiff names Defendants Elrod, McCormick. Sowell, Chandler, John Does 3-6, Brainstetter, and Ware.  (*Id*. at 7).  Plaintiff alleges that on March 14, 2023, Defendant Chandler brought him a breakfast tray which did not meet his dietary plan.  (*Id*.).  He told Chandler it was incorrect, and the kitchen staff brought another tray which was also wrong.  (*Id*.).  He again informed Defendant Chandler that the tray was incorrect, and he alleges Defendant Chandler advised him that Defendant Brainstetter – the supervisor – said "if [Plaintiff] doesn't eat what we brought he just won't eat."  (*Id*.).  He "immediately" filed a grievance, and at approximately 10:00 a.m., Defendant Sowell brought him food from the commissary and "attempted to make up for the lost breakfast, but by that time it was almost lunch," and Plaintiff had been without food for approximately 21 hours.  (*Id*.).  Plaintiff alleges Defendant Ware and Elrod are directly involved because they let him go without food from 6:00 p.m. to 10:00 a.m.  (*Id*.).  He alleges Defendants Chandler and Brainstetter are directly involved because they dealt with the situation incorrectly. Plaintiff alleges he often receives incorrect meals, and nobody pays attention.  (*Id*.).  He alleges Defendant McCormick is involved because he is the "top of the chain of command."  (*Id*.).

Plaintiff proceeds against Defendant in their official and individual capacities.  (*Id*. at 8).  As his official capacity claim, Plaintiff alleges "the act of not meeting my dietary needs" and going without food is a practice that "has been going on with my meals for months.  Myself going without portions of different foods happens very often!"  Plaintiff does not identify his dietary requirements and does not allege that he has lost weight or suffered other consequences.

For his third claim, Plaintiff names Defendants Deputy Watson, McCormick, Elrod, and John Does 7-10.  (*Id*.).  He alleges that on January 19, 2023, he was laying down in his cell when an inmate reached through the "cuff port" and threw hot water on him.  (*Id*. at 8-9).  He alleges the

3

cuff port had been left open by Deputy Watson. Plaintiff alleges he was "severely burned" by the hot water and called for help. When Defendant Deputy Watson arrived, Plaintiff asked for his supervisor and for medical attention. (*Id*.). Plaintiff alleges he did not receive medical help until Deputy Smith arrived at shift change. (*Id*.). The nurses[2] then came, looked at his face, neck, and arms and laughed at him, telling him to "put cold water on it." (*Id*.). Plaintiff alleges pictures were taken but he does not know the quality of the photos. He alleges Defendant Deputy Watson was involved by leaving the cuff port open. (*Id*.). He alleges Defendants McCormick and Elrod are involved because they are the "top of the chain of command." (*Id*.).

Plaintiff proceeds against Defendants in their official and individual capacities. (*Id*.) As his official capacity claim, Plaintiff alleges it is a widespread practice for staff to leave cuff ports open after meals and other times of day as well. (*Id*.).

For his fourth claim, Plaintiff names Defendant Gates, McFee, Mann, McCormick, Elrod, Parish, and John Does 7-10. (*Id*. at 10). He characterizes this claim as constituting a violation of his "Freedom of Speech, due process, conditions of confinement." (*Id*.). Plaintiff alleges that on February 24, 2023, he was served with a disciplinary report stating he had been submitting a "multitude" of grievances and requests since October 10, 2022. Plaintiff alleges he was not incarcerated in GCDC or anywhere else "on said dates."[3] (*Id*.). He received a disciplinary hearing the next day and was found guilty of "conduct that disrupts." (*Id*.). He was sentenced to 10 days of solitary confinement and restricted from tablet use for 30 days "in an attempt to stop him from

---

[2] The only medical staff named as a Defendant in this case is Christine Watson, and she is not mentioned by Plaintiff in this claim. The Court will infer that Plaintiff did not intend to bring a denial of medical care claim concerning the areas allegedly splashed with hot water.
[3] The Court takes judicial notice that the GCDC inmate roster indicates Plaintiff was booked into the facility on October 19, 2023. (Available at www.garlandcounty.org/190/Detention-Center. (last accessed Oct. 2, 2023)).

accessing the grievance procedures." (*Id*.).  He filed and exhausted grievances concerning the disciplinary charge but "was given no remedy."  Plaintiff alleges all of the Defendants are involved by either serving the disciplinary charge or are "in the direct chain of command that upheld the outcome/decision."  (*Id*.).  Plaintiff does not identify which Defendant served the disciplinary charge.

Plaintiff proceeds against all Defendants in their official and individual capacities.  (*Id*.).  As his official capacity claim, he alleges it is a widespread practice at GCDC to give disciplinary action to inmates who use the grievance process.  He alleges "this was a custom attempt to get [him] to stop filing grievances." (*Id*.).

Plaintiff seeks compensatory damages in the amount of $70,000, and $25,000 in punitive damages.  He also seeks all costs and fees for this lawsuit. (*Id*. at 11).

## II.  LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right.  *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. ANALYSIS

#### A. Claims One and Three

Plaintiff failed to allege facts sufficient to support a plausible failure to protect claim for either Claim One or Claim Three. Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victims' safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two-prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it."

*Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted).

In *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020), the Court of Appeals for the Eighth Circuit noted that most of their prior failure-to-protect cases arising out of "an inmate-on-inmate assault have involved an attacker who was known to be a volatile, dangerous man; or who previously threatened or fought the victim; or a victim who should have been better protected because of known inmate threats." *Id.* at 976 (citations omitted). In those cases, the Eighth Circuit noted that the "substantial risk of serious harm was obvious, and defendants' liability turned on the subjective issue of deliberate indifference (unless the victim had denied or not disclosed the prior threat or altercation to prison officials)." *Id.* The Court also noted that it has upheld the grant of qualified immunity when an inmate "is the unfortunate victim of a surprise attack by a fellow inmate." *Id*. "[B]ecause prisons are dangerous places, housing the most aggressive among us and placing violent people in close quarters, . . . prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another." Id. (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (cleaned up).

Here, Plaintiff does not allege that he and Inmate Lester had any violent history; that Lester had made threats against him, and Plaintiff had shared those threats with GCDC staff prior to the attack; or that Lester was known to be a violent individual with a known history of attacking GCDC staff or other inmates. Instead, Plaintiff merely alleges that they were of different inmate classification status and should not have been together. Plaintiff does not identify those classification statuses or state and explain their significance. As to the water-throwing incident,

7

Plaintiff presumably did not know who threw the water because he did not identify the inmate in his Complaint. At most, Plaintiff has alleged that GCDC officials were negligent in leaving doors open for working inmates, and leaving cuff ports open. This is insufficient to state a failure to protect claim.

### B. Claim Two

Plaintiff's personal capacity claim that he was given the incorrect breakfast on March 14, 2023, as well as his official capacity claim that he is frequently given an incorrect meal, fails to state plausible conditions of confinement claims. "One constitutional protection retained by the prisoner is the right to an adequate diet. Because control of the administrative details of a prison remains exclusively in the hands of prison officials, control of the diet is within their discretion, assuming it is adequate." *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) (per curiam) (citations omitted). However, the plaintiff has the burden of showing that the diet provided is not sufficient to maintain his or her health. *See Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir.1990) (per curiam) (citing *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir.1980)). Plaintiff has not met his burden. Although Plaintiff has alleged that he often received meals that did not meet his dietary requirements, he fails to identify those dietary requirements, fails to state how any meals were non-compliant, and fails to state that he lost weight or was otherwise negatively affected by any incorrect meals. In short, he has failed to allege any facts which indicate how his meals were insufficient to maintain his health. Accordingly, Plaintiff's second claim is subject to dismissal.

### C. Claim Four

Plaintiff alleges he received a disciplinary charge and sentence for filing a "multitude" of grievances. The filing of a disciplinary is actionable under § 1983 if the filing was done in retaliation for pursuing a constitutionally protected right. *Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009). Plaintiff, however, does not identify who issued the disciplinary charge

or allege that the issuance was retaliatory. Indeed, his primary concern seems to be that he was not incarcerated for the first several days of the timeframe listed on a disciplinary charge covering a period of several months. Further, he alleges that an unidentified number of the Defendants listed were only involved because they were in the "chain of command" and upheld the disciplinary decision. This states a theory of liability under *respondeat superior*, which is not applicable to claims under § 1983. *See e.g. Glick v. Sargent*, 696 F.2d 413, 415 (8th Cir. 1983) (Warden who played no role in the disciplinary process cannot be held liable for the outcome; supervisory role at the facility insufficient basis for liability under § 1983); *Stewart v. Hobbs*, No. 6:15-CV-06023, 2016 WL 309856, at *2 (W.D. Ark. Jan. 26, 2016) (Plaintiff's allegation that Defendants failed to reverse the disciplinary decision against him insufficient to support a claim); *Roberts v. Coleman*, No. 5:14-CV-00051-KGB-JT, 2014 WL 3689796, at *2 (E.D. Ark. July 24, 2014) (inmate's allegation that Warden failed to adequately investigate a disciplinary charge appeal before upholding the decision did not allege sufficient personal involvement to overcome *respondeat superior*).

While Plaintiff's fourth claim might have been actionable had it contained more factual details, Plaintiff's Second Amended Complaint fails to allege a sufficient factual basis to illustrate a plausible claim for relief. *See Martin*, 780 F.2d at 1337 (even a pro se Plaintiff must allege specific facts sufficient to state a claim).

### IV. CONCLUSION

For these reasons, it is recommended that: (1) the case be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (2) Plaintiff/Petitioner is warned that, in the future, this dismissal may be counted as a strike for purposes of 28 U.S.C. § 1915(g) and thus, the Clerk is directed to place a § 1915(g) strike flag on the case for future judicial

consideration; and (3) the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this dismissal would not be taken in good faith.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of October 2023.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE